# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

PERO ANTIC,

                          Plaintiff,

           -against-                 Civil Action No. 16-CV-2425 (JMF)

THE CITY OF NEW YORK, POLICE OFFICER
RICHARD CASTER, individually and in his capacity as
a member of the New York City Police Department, POLICE
OFFICER PAUL GIACONA, individually and in his capacity
as a member of the New York City Police Department,
POLICE OFFICER DANIEL DONGVORT, individually and
in his capacity as a member of the New York City Police
Department, POLICE OFFICER MICHAEL O'SULLIVAN,
individually and in his capacity as a member of the New York
City Police Department, and JOHN and JANE DOES, said
Names being ficitious and intended to represent individual
officers, members, agents, servants and/or employees of the
New York City Police Department in their individual and
official capacity,

                        Defendants.

-----------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THE COCHRAN FIRM
Attorneys for Plaintiff Pero Antic

Tracey L. Brown, Esq.
Derek S. Sells, Esq.
Stephanie R. Correa, Esq.
55 Broadway, 23rd Floor
New York, New York 10006
T: (212) 553-9165
tbrown@cochranfirm.com
dsells@cochranfirm.com
scorrea@cochranfirm.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ iii

PRELIMINARY STATEMENT ..................................................... 1

FACTS ............................................................................................ 2

ARGUMENT .................................................................................. 5

I.     DEFENDANTS' SUMMARY JUDGMENT MOTION SHOULD BE DENIED AS THERE ARE NUMEROUS GENUINE ISSUES OF MATERIAL FACTS ...................................................... 5

II.    ALL CRIMES PLAINTIFF WAS CHARGED WITH ARE SPECIFIC INTENT CRIMES AND PLAINTIFF'S INTENT IS A MATERIAL DISPUTED FACT ................................................................ 6

III.   DEFENDANTS FALSELY ARRESTED PLAINTIFF FOR OBSTRUCTION OF GOVERNMENTAL ADMINISTRATION, DISORDERLY CONDUCT, HARASSMENT, AND MENACING BECAUSE THEY LACKED PROBABLE CAUSE ...................................................... 7

A.  False Arrest Standard ............................................ 7

B.  Lack of Probable Cause ........................................ 8

IV.   DEFENDANTS DO NOT HAVE QUALIFIED IMMUNITY ............ 11

V.    PLAINTIFF WAS MALICIOUSLY PROSECUTED ...................... 11

A.  The prosecution was terminated in Plaintiff's favor ................... 12

B.  There was no probable cause for the prosecution of Plaintiff ......... 13

C.  Plaintiff Has Established Malice ................................ 13

VI.   DEFENDANT O'SULLIVAN USED EXCESSIVE FORCE ON PLAINTIFF ................................................................ 14

VII.  PLAINTIFF HAS SUFFICIENTLY ALLEGED THE PERSONAL INVOLVEMENT OF DEFENDFANTS GIACONA, DONGVORT AND CASTER ...................................................... 15

*i*

VIII.   PLAINTIFF HAS SUFFICIENTLY ESTABLISHED HIS CLAIMS
AGAINST THE CITY OF NEW YORK ..................................... 16

CONCLUSION ................................................................ 18

# LEGAL AUTHORITIES

## *Cases Cited*

Alicea v. City of New York, 2005 WL 3071274 (S.D.N.Y. 2005) ................. 11

Anderson v. Coughlin, 700 F.2d 37 (2d Cir 1983) ..................................... 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ............................... 5

Bd. Of County Com'rs of Bryan County, Okl. v. Brown............................. 16

Bernard v. U.S., 25 F.3d 98 (2d Cir. 1994) ............................................. 8

Boyd v. City of New York, 336 F.3d 72 (2d Cir. 2003)          ........................ 14

Brammer-Hoeltler v. Twin Peaks Charter Acad., 602 F.3d 1175 (105h Cir. 2010). ....... 16

Cantalino v. Danner, 96 N.Y.2d 191 (2001) ........................................... 13

Cioffi v. Averill Park Central School District Board of Education, 444 F.3d 158
 (2d Cir. 2006) ........................................................................... 5

Codling v. City of New York, 879 F.2d 1037 (2d Cir, 1989) ........................ 11

Coleman v. City of New York, 2016 WL 4184035 ...................................... 12, 13

Colon v. City of New York, 60 NY2d 78 (1983) ........................................ 11, 13

Covington v. City of New York, 171 F.3d 117 (2nd Cir, 1999) ........................ 7

Graham v. City of New York, 928 F.Supp. 2d 610 (E.D.N.Y. 2013) ................... 14

Hankins v. Great Atlantic and Pacific Tea Co., 208 A.D.2d 111 (1995) .............. 13

Hafer v. Melo, 502 U.S. 21 (1991) ....................................................... 15

Hayes v. New York City Police Department, 212 Fed. Appx. 60 (2d Cir. 2007) .... 14

Mawhirt v. Ahmed, 8 Fed.Appx. 125 (2d Cir. 2001) ................................... 10

Masson v. New Yorker Magazine, 501 U.S. 496 (1991) ............................... 5

Matsushita Elec. Indus. Co. v. Zenith Radio Corp. 475 U.S. 574 (1986) ........... 5

Meriwether v. Coughlin 879 F.2d 1037 (2d Cir., 1989) ................................. 11

Micalizzi v. Ciamarra, 206 F.Supp2d 564 (S.D.N.Y. 2002) ............................. 11

Monell v. Dep't of Soc. Servs. Of City of Yonkers, 436 U.S. 658 (1978)............. 16

Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997) ............................................ 12

Okezie v. Prince George's County, 2014 WL 8033007 (D. Md) ...................... 9

Oklahoma City v. Tuttle, 471 U.S. 808 (1985) ............................................ 16

Pinto v. Allstate Ins. Co., 221 F.3d 394 (2d Cir. 2000) ................................. 5

Posr v. Doherty, 944 F.2d 91 (2d Cir. 1991) .............................................. 13

Redd v. N.Y. Div. of Parole, 678 F.3d 166 (2d Cir. 2012) ............................. 5

Roberts v. City of New York, 753 F. Supp. 480 (S.D.N.Y. 1990) ..................... 8

Rodriguez v. City of New York, 72 F.3d 1051 (2d Cir. 1995) ......................... 5

Russell v. Smith, 68 F.3d 33 (2d Cir. 1995) ............................................... 11

Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir 1995) ........................... 7

Smith-Hunter v. Harvey, 95 N.Y.2d 191 (2000) ......................................... 12

Soto v. City of New York, 2014 WL 11199472 (E.D.N.Y.) ............................ 14

Torres v. Jones, 26 N.Y.3d 742 (2016) ................................................... 13

United States v. Colon, 250 F.3d 130 (2d Cir. 2001) ................................... 10

United States v. Fisher, 702 F.2d 372 (2d Cir. 1983) ................................... 8

United States v. Hensley, 469 U.S. 221 (1985) .......................................... 10

Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996) .............................................. 8

## Statutes Cited

Fed. R. Civ. P. 56(c) ................................................................. 5

N.Y. Penal Law §120.15 ........................................................... 7

N.Y. Penal Law §195.05 ........................................................... 6

N.Y. Penal Law §240.20 ........................................................... 6

N.Y. Penal Law§240.26 ............................................................ 6

42 U.S.C. 1983 ....................................................................... 7

## PRELIMINARY STATEMENT

Pero Antic was viciously pushed to the ground, arrested and prosecuted for simply tapping an unoccupied, standing police officer on the shoulder. Mr. Antic's tap on the shoulder did not interfere with the arrest of Mr. Sefolosha, was not meant to interfere with the arrest of Mr. Sefolosha, was not meant to interfere with police activity and lacked the specific intent for establishing probable cause to arrest.

The City's argument that Mr. Antic's tap on the shoulder was anything more than a lawful act is belied by the factual record of this case that shows inconsistencies and discrepancies in the police officers' versions meant to cover their illegal conduct. Officer O'Sullivan who without probable cause or justification shoved Mr. Antic to the ground following the tap tried to cover his use of excessive force by falsely claiming he was involved in the arrest of Mr. Sefolosha and then causing Mr. Antic to have to face criminal prosecution. But his claim of being interfered with during the arrest of Mr. Sefolosha is undermined by the testimony of others, including Defendant police officers. As such, Mr. Antic's claims must be decided by a jury and not this Court.

Similarly, Mr. Antic's claim of malicious prosecution must be presented to a jury. The City's claim that the prosecution's dismissal was an act of mercy is without merit. By its own admission, the Manhattan District Attorney's office dismissed the prosecution because it could not prove that Mr. Antic acted with the specific intent needed to satisfy its burden of proof. Nowhere in the record of this case or in the City's moving papers has there been any proof to suggest a criminal intent by Mr. Antic in tapping Officer O'Sullivan on the shoulder. As such, Mr. Antic won his criminal proceeding on the merits, not as an act of mercy.

Likewise, the City's qualified immunity defense cannot serve as a basis for the Defendants to prevail. As Plaintiff's police procedures expert has opined, the conduct of

Defendant police officers violated proper police protocol by arresting Mr. Antic without justification and with unnecessary force. Under such circumstances, the claim of qualified immunity cannot shield the police misconduct as a matter of law.

## **FACTS**

The following facts are material to this matter and are derived from Plaintiff's Answers to Defendants' Statements of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pltf's 56.1 Ans.")

In the early morning hours of April 8, 2015, Plaintiff Pero Antic was with his friend and Atlanta Hawk teammate, Thabo Sefolosha, in New York City. See Pltf's 56.1 Ans. at ¶1. Having just arrived in town to play a professional basketball game the following day, they went to a nightclub known as 1 Oak, located at 453 West 17th Street in Manhattan. Id. Plaintiff and Mr. Sefolosha met a few friends at 1Oak and sat together at a table where they were joined by Carolyn Colon and Cherisse Porter. Id. at ¶2. While Plaintiff and Mr. Sefolosha were in the club, a stabbing occurred outside on the street and the club closed with security directing everyone to leave. Id.

Plaintiff and Mr. Sefolosha left 1 Oak with their party which included Ms. Porter and Ms. Colon. Id. at ¶3. When they walked out to the sidewalk, they were directed by police officers to walk toward 10th Avenue, away from the crime scene that had set up nearer to 9th Avenue. Id. at ¶6. Plaintiff and his friends complied with the officers and began walking toward 10th Avenue. Id. at ¶6. While they were walking as directed by the police, Plaintiff was using his phone to call for a car service to pick him up. Id. at ¶7.

2

While walking to 10th Avenue, Defendant Police Officer Giacona began physically pushing Plaintiff and Mr. Sefolosha along and cursing at them saying, "get the fuck off my block." Id. at ¶¶8-9. Despite there being approximately 100 other people on West 17th Street being cleared from the area, Defendant Giacona focused his vitriol on Mr. Sefolosha. Id. When Defendant Giacona continued to curse at Mr. Sefolosha, Ms. Colon asked a nearby officer why Giacona was acting that way. Id. at ¶¶9-10. Defendant Police Officer Caster asked for Plaintiff's assistance in trying to diffuse the situation between Defendant Giacona and Mr. Sefolosha and Plaintiff indicated that he was trying. Id. at ¶9. Plaintiff and his party never stopped walking as directed, and once they reached 10th Avenue, their Uber car was waiting for them. Id. at ¶11. In spite of the directives that Defendants gave to Plaintiff and his party to leave the area, there were scores of people who remained. Id. at ¶12. Continuing to comply with police directives to leave the area, Mr. Antic and Mr. Sefolosha approached their Uber car and Plaintiff got into the car. Id. at ¶14-15. Before Mr. Sefolosha could get into the car, a homeless man approached him and asked for money. Id. at ¶16. As Mr. Sefolosha walked toward the man to give him money, he was grabbed by Defendant Police Officer Caster who in a preposterous overreaction to Mr. Sefolosha trying to give money to a less fortunate man, pushed him to the ground. Id. at ¶¶16-23. Defendant Police Officer Dongvort, who had not seen Mr. Sefolosha break any law, joined Defendant Caster and grabbed and pushed Mr. Sefolosha as well. Id. at ¶¶20-22, 25-27. While Mr. Sefolosha was being calm and non-confrontational, Defendant Giacona joined in the excessive force and false arrest, and pulled Mr. Sefolosha's arms behind his back in order to handcuff him. Id. at ¶¶28, 31.

When Plaintiff saw his friend being unjustly and illegally assaulted by police officers, he got out of the car and walked up to a nearby officer, Defendant O'Sullivan, to ask what was

happening. Id. at ¶ 35. Plaintiff tapped Defendant O'Sullivan on the shoulder to speak with him. Id. At the time Plaintiff tapped Defendant O'Sullivan on the shoulder, O'Sullivan was **not** engaged in, or assisting in the arrest of Mr. Sefolosha. Id. at ¶¶ 32-35. Instead of simply responding to Plaintiff's request for information, Defendant O'Sullivan pushed Plaintiff with excessive force, knocking all 6 feet 11 inches tall, and 260 pounds of Plaintiff on to the ground. Id. at ¶¶ 36-38.

Defendant Giacona arrested Plaintiff and with the help of Defendant Dongvort, completed all of the charging paperwork. Id. at ¶ 41. Initially, Defendant Giacona charged Plaintiff with obstruction of governmental administration, disorderly conduct and menacing. Id. At no time did Giacona witness Plaintiff break any law, including the laws Giacona charged him with violating. Id. Even though Defendant Giacona was at the scene, and made his own observations, he relied on information provided by Defendant O'Sullivan and Sgt. Fontana. Id. Fontana, who was not at the scene, directed Giacona to charge Plaintiff with menacing, a more serious charge than harassment, even though neither O'Sullivan, Giacona, nor Fontana provided any facts or information to support such a charge. Id.

Plaintiff 's arrest and criminal charges resulted in international media attention with Plaintiff's arrest photos appearing on television news broadcasts, newspapers, and magazines all over the world, including his home country of Macedonia. Id. at ¶42. Video of the arrest also appeared in on TMZ and is forever accessible on the internet. Id. Plaintiff was held in jail for several hours, processed and finger printed like a criminal and humiliated all over the world. Id. Ultimately, the charges presented by the police to the District Attorney's office against Plaintiff were: obstruction of governmental administration; disorderly conduct; and harassment. Id. at ¶

42-43. Finally, after multiple court appearances that required him traveling from Europe to New York, Judge Kenneth McGrath dismissed all charges against Plaintiff. Id. at ¶ 42.

## ARGUMENT

## I. DEFENDANTS' SUMMARY JUDGMENT MOTION SHOULD BE DENIED AS THERE ARE NUMEROUS GENUINE ISSUES OF MATERIAL FACTS[1]

Summary Judgment should only be granted when, construing the facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Redd v N.Y. Div. of Parole, 678 F.3d 166 (2d Cir. 2012). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish their right to judgment as a matter of law. Rodriguez v. City of New York, 72 F.3d 1051 (2d Cir. 1995). The role of the Court is to determine whether there is a genuine issue of fact for trial, not to determine the truth of a matter or weigh evidence. Cioffi v Averill Park Central School District Board of Education, 444 F.3d 158 (2d Cir. 2006). When deciding a summary judgment motion, Courts must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Pinto v. Allstate Ins Co., 221 F.3d 394 (2d Cir. 2000). The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor," Anderson v Liberty Lobby, Inc. 477 U.S. 242 (1986), including "questions of credibility and the weight to be accorded to particular evidence." Masson v New Yorker Magazine, 501 U.S. 496 (1991).

---

[1] Defendants' motion should be deemed a partial summary judgment motion as it fails to address all of the causes of action in Plaintiff's Amended Complaint

For the reasons set forth below, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment in its entirety on account of the fact that the record is replete with genuine issues of material fact that should be determined by a trier of fact.

## II.  ALL CRIMES PLAINTIFF WAS CHARGED WITH ARE SPECIFIC INTENT CRIMES AND PLAINTIFF'S INTENT IS A MATERIAL DISPUTED FACT

Each of the crimes that Plaintiff was charged with are specific intent crimes that require proving Plaintiff's intent. Obstruction of governmental administration requires a showing that the alleged perpetrator intentionally acted to prevent or attempt to prevent a public servant from performing an official function by means of intimidation, interference, unlawful act, or physical force. N.Y. Penal Law §195.05. Here, Plaintiff testified that he tapped Defendant O'Sullivan on the shoulder in order to ask him a question, not to interfere or prevent him from arresting Mr. Sefolosha. See Pltf's 56.1 Ans. at ¶35. Even O'Sullivan testified that he did not know what Plaintiff's intention was when he tapped him on the shoulder. Id.

The crime of disorderly conduct requires that the alleged perpetrator "with intent to cause public inconvenience, annoyance, or alarm...." engages in certain conduct including refusing to disperse. N.Y. Penal Law § 240.20. Here, Plaintiff testified that he obeyed police directives and cleared off of West 17th Street and got into a waiting car. See Pltf's 56.1 Ans. at ¶ 7-11. Other witnesses, including Stacey Slade, testified that Plaintiff walked straight to the end of the block without stopping. See Pltf's 56.1 Ans. at ¶11.

The crime of harassment requires that with the intent to harass, annoy or alarm, the alleged perpetrator strikes, shoves, kicks, or has other physical contact, or threatens to do so. N.Y. Penal Law §240.26. Here, Plaintiff testified that he tapped Defendant O'Sullivan on the shoulder to ask him a question, not to harass, annoy or alarm him. See Pltf's 56.1 Ans. at ¶35. O'Sullivan testified that he did not know what Plaintiff's intent was. Id.

6

The crime of menacing requires that by physical menace, the alleged perpetrator intentionally places or attempts to place a person in fear of death, imminent physical injury. N.Y. Penal Law §120.15. Here, no evidence has been presented that Plaintiff physically menaced O'Sullivan or anyone else. See Pltf's 56.1 Ans. at ¶41.

The specific intent required for all of the crimes that Plaintiff was charged with makes summary judgment on these claims impossible as there are material issues in dispute as to Plaintiff's intent that requires a determination by the trier of fact. Issues as to the motive and intent with which actions are taken are not appropriate for determination on summary judgment. Anderson v Coughlin, 700 F.2d 37 (2d Cir 1983).


III. **DEFENDANTS FALSELY ARRESTED PLAINTIFF FOR OBSTRUCTION OF GOVERNMENTAL ADMINISTRATION, DISORDERLY CONDUCT, HARASSMENT, AND MENACING BECAUSE THEY LACKED PROBABLE CAUSE**

A. **False Arrest Standard**

A claim pursuant to 42 U.S.C. 1983 for false arrest rests on the 4th Amendment protection against unreasonable seizures, and contains essentially the same elements as a false arrest claim under New York law. Covington v. City of New York, 171 F.3d 117 (2nd. Cir 1999). In order to succeed on a false arrest claim, a plaintiff must show "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. Singer v. Fulton County Sheriff, 63 F3d. 110 (2d Cir 1995).

In its moving papers, Defendants have conceded the first three elements of Plaintiff's

false arrest claim and only dispute the fourth element, whether the confinement was privileged.

Therefore the only issue relating to the elements of Plaintiff's false arrest claim is whether the

Defendants' conduct was privileged, meaning whether the Defendants possessed probable cause

to arrest Mr. Antic.

## B. <u>Lack of Probable Cause</u>

Where there is a warrantless arrest, there is a presumption that there was no probable

cause and thus no justification for the arrest. <u>Roberts v. City of New York</u>, 753 F.Supp. 480

(S.D.N.Y. 1990). In such a case, the police have the burden of proving that they had probable

cause for the arrest. <u>Id</u>. Probable cause to arrest is a complete defense to an action for false arrest

under both state and federal law. <u>Bernard v. U.S.</u>, 25 F.3d 98 (2d Cir. 1994). A police officer

has probable cause to arrest when he has knowledge or reasonably trustworthy information of

facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief

that that the person to be arrested has committed or is committing a crime." <u>Weyant v. Okst</u>, 101

F.3d 845 (2d Cir. 1996). Probable cause requires more than rumor, suspicion, or even a strong

reason to suspect that someone has committed a crime. <u>United States v. Fisher</u>, 702 F.2d 372 (2d

Cir. 1983).

In the present case, there was no warrant for the arrest of Mr. Antic so the Defendants

must prove that they had probable cause for the arrest. Despite Defendants' contentions, the

most material of their factual assertions are disputed by Plaintiff and the contradictory testimony

of their own officers and other witnesses. A Court cannot find probable cause as a matter of law

where there are disputes as to the pertinent events and the knowledge of the arresting officers."

8

Weyant v. Okst, *supra* Here there is a clear dispute as to what knowledge Defendant Giacona, the arresting officer, had regarding Plaintiff's actions and the intent behind them. See Pltf's 56.1 Ans. at ¶41. In addition, Defendant O'Sullivan's version of events describing Plaintiff's behavior is either contradicted or not supported by the testimony of his fellow officers. See Pltf's 56.1 Ans. at ¶30-32.

Specifically, Defendant Giacona never observed Plaintiff commit any crime or do anything wrong. See Pltf's 56.1 Ans. at ¶31, 41. In fact, Defendant Giacona testified at his deposition that he never saw Plaintiff act aggressively at any point during April 8, 2015, and only saw Plaintiff being pushed to the ground himself. Id. He did not observe Plaintiff acting in a disorderly fashion and did not observe him harass or menace Defendant O'Sullivan. Id. Likewise, fellow officers, Defendant Dongvort and Defendant Caster never saw Plaintiff acting in a disorderly fashion, or harass or menace Defendant O'Sullivan. Id. In fact, Defendant Caster testified that he spoke to Plaintiff about getting Mr. Sefolosha out of the area, and that Plaintiff responded that he was trying, which was in an attempt to diffuse the situation. Id. at ¶9. Okezie v. Prince George's County, 2014 WL 8033007 (D. Md.) (courts are hesitant to find probable cause for disorderly conduct when the plaintiff acted in a calm manner.)

With respect to the arrest of Plaintiff for obstruction of governmental administration, neither Defendants Giacona, Caster, Dongvort, observed Plaintiff interfere with Defendant O'Sullivan performing any official function. See Pltf's 56.1 Ans. at ¶31, 41. In fact, Giacona testified that only he, Caster and Dongvort participated in the arrest of Mr. Sefolosha, and that O'Sullivan did not restrain or arrest or even touch Mr. Sefolosha. Id. at ¶31. Giacona clearly testified that he did not see Plaintiff interfere with O'Sullivan arresting Sefolosha. Id. at ¶31, 41. Of course it would be impossible for Giacona to see Plaintiff interfering with actions that never

took place. Similarly, Defendant Dongvort testified that it was him, Caster and Giacona who effected the arrest of Mr. Sefolosha, not O'Sullivan. Id. Defendant Caster also testified that it was only him, Dongvort and Giacona that participated in the arrest of Mr. Sefolosha. Id. As for O'Sullivan, Caster said he was about two feet away from the arrest and was just "standing there," and he had no knowledge of what Defendant O'Sullivan was doing before he pushed Plaintiff to the ground. Id.

Defendant O'Sullivan is alone on an island as he is the only person, including his fellow officers, to testify that he was engaged and assisting in the arrest of Mr. Sefolosha at the time that Plaintiff touched his shoulder. Id. at ¶31-34. No one else supports his version. Id. Defendants' attempt to rely on the collective knowledge doctrine fails. For the collective knowledge doctrine to apply, if the arresting officer lacks specific information to form probable cause, he can rely on sufficient justifying information known by other police officers. United States v. Colon, 250 F.3d 130 (2d Cir. 2001), United States v. Hensley, 469 U.S. 221 (1985). However, here, Giacona did not lack specific information, but instead had his own specific information that directly contradicted O'Sullivan's version so he was not justified in relying on O'Sullivan's information as he knew it to be false. Giacona had clear reasons to doubt the veracity of the information that O'Sullivan provided him for the arrest of Plaintiff. He did not observe Plaintiff grab or touch O'Sullivan's shoulder, or menace or harass him in any way, and only saw O'Sullivan push Plaintiff to the ground; he did not observe any disorderly conduct and in fact didn't himself attempt to arrest Plaintiff for any perceived delay in obeying commands to walk from 1 Oak to 10th Avenue. See Pltf's 56.1 Ans. at ¶31, 41. Likewise, Giacona had no reason to rely on O'Sullivan's version of what he was doing when Plaintiff touched his shoulder because

Giacona was there and knew that Plaintiff had not interfered with O'Sullivan's purported arrest of Sefolosha.

## IV.    DEFENDANTS DO NOT HAVE QUALIFIED IMMUNITY

First, Defendants cannot prevail on their affirmative defense of qualified immunity since qualified immunity is not a defense to a state law claim of false arrest or malicious prosecution Mawhirt v. Ahmed, 8 FedAppx. 125 (2d Cir,. 2001); Micalizzi v. Ciamarra, 206 F.Supp2d 564 (S.D.N.Y 2002) (denying defendant's summary judgment motion on state law false arrest claims as "New York state does not recognize the doctrine of qualified immunity…")

Police officers can prevail on a §1983 claim of false arrest under the qualified immunity theory only if they prove that they did not know that what they did was a constitutional violation and that a competent police officer could not have been expected to know that their conduct was a constitutional violation.  Meriwether v. Coughlin, 879 F.2d 1037 (2d Cir, 1989).  Essentially, since Defendants have the burden of proof for their affirmative defense, they need to prove that their actions were objectively reasonable.  Where there are sharply disputed versions as to the relevant events surrounding the plaintiff's arrest, a defendant cannot meet this burden and summary judgment is inappropriate.  Codling v City of New York, 68 Fed. Appx. 227 (2d Cir. 2003), Alicea v. City of New York, 2005 WL 3071274 (S.D.N.Y. 2005).

Here, as described above, there is ample evidence that Defendants did not have probable cause to arrest Plaintiff on any of the charges, and that no reasonable officer would conclude otherwise and therefore had to know that their conduct was a constitutional violation.  See Pltf's 56.1 Ans. at ¶31, 41.  This precludes summary judgment .

# V. PLAINTIFF WAS MALICIOUSLY PROSECUTED

The elements of malicious prosecution are 1) the initiation or continuation of a criminal proceeding against plaintiff; 2) termination of the proceeding in plaintiff's favor; 3) lack of probable cause for commencing the proceeding; and 4) malice. Colon v City of New York, 60 NY2d 78 (1983), Russell v. Smith, 68 F.3d 33 (2d Cir. 1995).

Defendants concede by omission that Defendants Giacona, and O'Sullivan initiated the prosecution of Plaintiff, of which there is clear evidence. But Defendants argue that Plaintiff cannot show that Defendants Caster or Dongvort initiated the prosecution. Defendants' Memo at 17-18. Plaintiff concedes that other than knowingly standing by when his fellow officers arrested someone without probable cause, Defendant Caster did not take his action further by initiating the prosecution or further participating in the prosecution. Defendant Dongvort by contrast, was the officer who, along with Giacona, prepared the arrest report detailing the bogus charges of disorderly conduct, obstruction of governmental administration, and menacing. See Pltf's 56.1 Ans. at ¶41.

## A. The prosecution was terminated in Plaintiff's favor

After being presented with the criminal charges by Defendants, on September 9, 2015 Judge Kenneth McGrath dismissed all of the charges. Id. at ¶42-43. At the hearing where Judge McGrath dismissed the charges, the District Attorney's office stated on the record that Plaintiff was trying to calm down the situation between Mr. Sefolosha and the Defendants on April 8, 2015 and that he did not cause any injury to anyone and thus moved to dismiss the charges in the interest of justice. Id. This statement indicated that the District Attorney's office could not prove the elements of the crimes with which Plaintiff was charged because of the lack of

evidence of specific intent required to prove the case. Defendants' argument that the dismissal was motivated by mercy is not supported by the record. In fact, Defendants acknowledge that Plaintiff didn't have specific intent so to suggest that the District Attorney acted with mercy is disingenuous. They go on to cite cases related to acts of mercy requested by, or accepted by the accused. See Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997), see also Smith-Hunter v. Harvey, 95 N.Y.2d 191 (2000). These cases are inapposite to the facts at bar as they involve dismissals on speedy trial grounds, or where the prosecution specifically articulated that it was motivated by mercy, which is not the case with Plaintiff's dismissal. Here, there was no determination or statement made by the Court or the District Attorney's office that the dismissal was motivated by mercy. See Pltf's 56.1 Ans. at ¶42.

Regardless of what position the District Attorney's office takes, it is the Court that makes the decision on the dismissal of the charges. Courts have consistently held that the termination of proceedings does not need to affirmatively demonstrate the plaintiff's innocence. Coleman v City of New York, 2016 WL 4184035, Cantalino v. Danner 96 N.Y.2d 191 (2001) (holding that the law "should not require one who is falsely accused to proceed to trial – incurring additional financial and emotional costs – as a prerequisite to recovery for malicious prosecution.") See also Hankins v Great Atlantic and Pacific Tea Co., 208 A.D.2d 111(1995). The Second Circuit requires that each charge be analyzed separately when considering malicious prosecution claims. Posr v. Doherty, 944 F.2d 91 (2d Cir. 1991). Coleman v City of New York, 2016 WL 4184035 (holding that when multiple offenses are charged, the favorability of termination must be assessed as to each). Therefore, the Court must conduct a fact-specific inquiry determined by the unique circumstances of each case. Such fact-specific inquiries are incompatible with summary judgment determinations.

## B. There was no probable cause for the prosecution of Plaintiff

As discussed above, Defendants had no probable cause to arrest Plaintiff for any of the charges and thus there was no probable cause to commence the criminal proceedings. Probable cause for the purposes of malicious prosecution consists of such facts and circumstances that would lead a reasonably prudent person in like circumstances to believe the malicious prosecution plaintiff is guilty of the underlying offense. Colon v City of New York, 60 N.Y.2d 78 (1983), Torres v. Jones, 26 N.Y.3d 742 (2016) (denying summary judgment on plaintiff's malicious prosecution and false arrest claims.) Defendants knew at the time of the arrest and at the time of the prosecution that they could not establish the specific intent needed to charge Plaintiff. See Pltf's 56.1 Ans. at ¶41. In addition, Defendant Giacona knew that Defendant O'Sullivan was not a participant in the arrest of Mr. Sefolosha and that Plaintiff had not interfered with that arrest, as his observed Defendant O'Sullivan push Plaintiff to the ground.

## C. Plaintiff Has Established Malice

Malice is inferred when there is a lack of probable cause. Boyd v. City of New York, 336 F.3d 72 (2d Cir. 2003), Soto v City of New York, 2014 WL 11199472 (E.D.N.Y). There were no "benign misjudgments" here, as Defendants allege, but instead, Defendants knowingly proceeded with charges for which there was ample evidence that Plaintiff had not committed any of the charged crimes. Defendants' acts were deliberate in that they needed to justify charges in this highly publicized case that included video footage of Defendant police officers assaulting Mr. Sefolosha resulting in his broken leg, and Defendants wrongfully arresting Plaintiff. See Pltf's 56.1 Ans. at ¶31-42.

## VI.    DEFENDANT O'SULLIVAN USED EXCESSIVE FORCE ON PLAINTIFF

Plaintiff is six feet eleven inches tall, and weighs over 250 pounds. Id. at ¶36-38.  Defendant

O'Sullivan pushed Plaintiff with enough force that a fit, professional basketball player was

pushed to the ground.  Id.  This amount of force was not "de minimus" as Defendants allege, as it

exceeded the force needed under the circumstances.  No reasonable person would suggest that if

someone taps a police officer on the shoulder, their response should be to push the person down

on to the ground.  Lemmo v. City of New York, 2011 WL 4592785 (E.D.N.Y) (holding that a

reasonable jury could find that any use of force was inappropriate under the circumstances.)

Hayes v. New York City Police Department, 212 Fed. Appx. 60 (2d Cir. 2007) (holding that

defendants are liable where the force used exceeded the force needed for the factual

circumstances and the fact that the plaintiff did not suffer serious injury is not dispositive.) See

also Graham v. City of New York, 928 F.Supp. 2d 610 (E.D.N.Y. 2013)(the court denied

summary judgment on an excessive force claim where there was no physical injury).

## VII.    PLAINTIFF HAS SUFFICIENTLY ALLEGED THE PERSONAL
    INVOVLEMENT OF  DEFENDANTS GIACONA, DONGVORT AND
    CASTER

It is unclear from Defendants moving papers if they are moving for summary judgment as to

Plaintiff's §1983 claims as to the individually-named Defendants, other than Defendant

O'Sullivan.  Defendants ask the Court to order Plaintiff to "articulate a[n] cognizable theory of

how each of defendants…were personally involved in some constitutional harm." Defendants'

Memo at 18.  It appears as if Defendants are making a motion to dismiss the complaint as they

are challenging Plaintiff's allegations as opposed to evidence and proof.  As Defendants know,

the time to file a motion to dismiss on the pleadings has long passed. Regardless, Defendant

provides one sentence to articulate the basis for its position – that only O'Sullivan used force

against Plaintiff. This ignores the facts and circumstances of Plaintiff's false arrest and malicious prosecution that deprived Plaintiff of his constitutional rights, to which all of the named Defendants were involved by acting in their capacity as New York City police officers. Hafer v. Melo, 502 U.S. 21 (1991) (holding that to establish personal liability in a §1983 action, it is enough to show that the official caused the deprivation of a federal right while acting under color of state law.)

## VIII. PLAINTIFF HAS SUFFICIENTLY ESTABLISHED HIS CLAIMS AGAINST THE CITY OF NEW YORK

To hold a municipality liable under §1983 for a constitutional violation, the plaintiff must be able to establish that "official policy is the moving force of the constitutional violation." Monell v. Dep't of Soc. Servs. Of City of Yonkers, 436 U.S. 658 (1978). The burden is met by showing that there exists a municipal "policy" or "custom" that caused the plaintiff's injury. Bd. Of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397 (1997). Oklahoma City v. Tuttle, 471 U.S. 808 (1985) cited by Defendants, defines a "moving force" as an "affirmative link between the…inadequacies alleged, and the particular constitutional violation at issue."

Courts have held that the municipal custom can include: an informal custom that amounts to a widespread practice, as well as, a failure to adequately train or supervise employees where the failure results from deliberate indifference to the injuries caused. Brammer-Hoeltler v. Twin Peaks Charter Acad., 602 F.3d 1175 (105h Cir. 2010).

Plaintiff has established that the City of New York failed to adequately train and supervise its police officers due to its deliberate indifference to the violation of Plaintiff's

rights. As articulated in Mr. Signorelli's report, police officers are trained that to make lawful arrests they must have probable cause and they are trained that probable cause consists of the facts and circumstances that would lead a reasonable person to conclude that the person to be arrested committed the offense. Defendant Giacona arrested Plaintiff knowing there was no lawful basis and knowing that each of the crimes Plaintiff was arrested for required a specific intent to harm. Defendant Giacona knew that he had no probable cause or basis or evidence to establish Plaintiff's intent. Plaintiff touching O'Sullivan on his shoulder did not place O'Sullivan in fear of death or serious injury and he had therefore not menaced O'Sullivan. Defendant Giacona knew that Defendant O'Sullivan did not assist or effectuate the arrest of Mr. Sefolosha, and that when Plaintiff tapped him on the shoulder to ask him a question, it could not have been diverting his attention from that arrest. Nonetheless, Defendant Giacona arrested Plaintiff for obstruction of governmental administration. making his arrest on that charge a violation of proper police practices and procedures. Similarly, Giacona knew that tapping an officer on the shoulder to ask a question did not rise to the level of intending to harass, annoy, or alarm him, yet he arrested Plaintiff for harassment. And Defendant Giacona knew that Plaintiff had dispersed from the area in compliance with officers' directives, yet he arrested him for disorderly conduct. Defendants' conduct in using physical force to make an improper arrest on these bogus charges was a clear violation of the standards of proper police procedures and practices.

This overcharging of Plaintiff by officers who flagrantly violated standards of proper police procedures and practices was unwarranted. Viewing the evidence in the light most favorable to Plaintiff, as this Court must, Plaintiff has presented evidence of a municipal policy or custom, is the moving force of the violation of Plaintiff's constitutional rights.

## **CONCLUSION**

Based on the foregoing reasons, Defendants' motion for summary judgment should be

denied.

Dated: New York, New York
April 28, 2017

_____/s/_____

TRACEY L. BROWN
DEREK S. SELLS
THE COCHRAN FIRM
Attorneys for Plaintiff
233 Broadway - 5th Floor
New York, New York 10279
Tel: (212) 553-9215

To:

Brian Francolla, Esq. (Via ECF)
Matthew Modafferi (Via ECF)
Zachary W. Carter
Corporation Counsel of the City of New York
Attorney for Defendants City, Giacona, Caster, Dongvort, O'Sullivan
100 Church Street, Room 3-142
New York, New York 10007