USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/27/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
: 
PERO ANTIC, :
:
Plaintiffs, :
:
-v- :
:
THE CITY OF NEW YORK, et al., :
:
Defendants. :
:
----------------------------------------------------------------------X

16-CV-2425 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

     In 2015, Pero Antic and Thabo Sefolosha were teammates on the National Basketball

Association's Atlanta Hawks.  Early on the morning of April 8th that year, they were both

arrested after officers from the New York City Police Department ("NYPD") responded to a

nightclub to investigate a stabbing (a stabbing in which Antic and Sefolosha were uninvolved).

Thereafter, they each filed civil rights suits against the City of New York and various NYPD

officers, alleging — among other things — claims of false arrest, malicious prosecution, and

excessive force.  On April 5, 2017, the *Sefolosha* case settled; the *Antic* case did not.  (*See*

Docket No. 50; *see also* 16-CV-2564, Docket No. 54).  Instead, Defendants moved, pursuant to

Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all of Antic's claims.

(Docket No. 45).  By "bottom-line" Order entered on June 28, 2017, the Court granted

Defendants' motion "[f]or reasons to be provided in a forthcoming opinion."  (Docket No. 68).

This is that opinion.

## BACKGROUND

     The following facts, taken from materials submitted by the parties, are, unless otherwise

noted, undisputed. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011). In the early morning hours of April 8, 2015, Antic and Sefolosha were in 1 OAK, a New York City nightclub on 17th Street near 10th Avenue, when a stabbing occurred outside the lounge. (Docket No. 48 ("Defs.' SOF") ¶¶ 1-2). To secure the crime scene, the responding NYPD officers directed those in the nightclub — including Antic, Sefolosha, and two women who were with them — to leave and walk towards 10th Avenue. (*Id.* ¶¶ 6, 12). As they walked in that direction, one of the Defendants here — NYPD Officer Paul Giacona — singled out Sefolosha, and repeatedly directed him (how forcefully is a matter of some dispute, but ultimately irrelevant) to keep moving. (Defs.' SOF ¶ 11; Docket No. 62 ("Pl.'s SOF") ¶ 9).

When the group arrived at 10th Avenue, Antic and the two women got in a car that Antic had ordered. (Defs.' SOF ¶ 15; Pl.'s SOF ¶¶ 7, 15). Sefolosha, however, was approached by a homeless-looking man asking for money. (Defs.' SOF ¶ 17). Sefolosha sought to give the man some money, but before he could do so another Defendant here — Officer Daniel Dongvort — escorted the man away. (*Id.* ¶ 18). Instead of entering the car, Sefolosha followed Officer Dongvort and the man with his hand extended, apparently in an effort to give the homeless man the money. (*Id.* ¶¶ 20-21). Moments later, a third Defendant here — Officer Richard Caster — grabbed Sefolosha; other officers came to Officer Caster's assistance and, after a brief scuffle during which Sefolosha suffered injuries to his right fibula and certain ligaments, they arrested Sefolosha. (*Id.* ¶¶ 23, 27-28; 16-CV-2564, Docket No. 8 ("Sefalosha Compl.") ¶ 33).

Whether (or, at a minimum, in what ways) the final individual Defendant here — Officer Michael O'Sullivan — assisted in Sefolosha's arrest is to some extent unclear. He and at least one other officer testified that he was among those who participated in Sefolosha's arrest. (Docket No. 46 ("Francolla Decl."), Ex. I ("O'Sullivan Examination"), at 44; Docket No. 65

("Modafferi Decl."), Ex. B ("Rossi Testimony"), at 34). Similarly, Antic himself testified that he approached Officer O'Sullivan to ask why the officers were "do[ing] this" to Sefolosha (Francolla Decl., Ex. N ("Antic Examination"), at 32), and that Officer O'Sullivan was then "dealing with Thabo." (*Id.* at 34). And Sefolosha identified Officer O'Sullivan as one of the officers who had "attacked" him prior to his arrest. (Sefolosha Compl. ¶ 32). But other officers were less certain of Officer O'Sullivan's role (*see* Docket No. 61 ("Brown Decl."), Ex. 9 ("Caster Examination"), at 83, 91; Brown Decl., Ex. 10 ("Dongvort Examination"), at 73), and at least one officer explicitly testified that "Officer O'Sullivan was not arresting Mr. Sefolosha," (Brown Decl., Ex. 17 ("Giacona Examination"), at 121). Regardless, there is no dispute that Officer O'Sullivan was standing only a few feet away from Sefolosha when the arrest occurred and that he was participating in the NYPD's efforts to secure the area around the 1 OAK nightclub. (*See* Pl.'s SOF ¶ 31; Caster Examination 105, 142).

Observing these events, Antic got out of the car and approached Officer O'Sullivan from behind to ask why Sefolosha was being arrested. (Defs.' SOF ¶ 34; Pl.'s SOF ¶ 35; Antic Examination 32-33). To get Officer O'Sullivan's attention, Antic touched the officer on the shoulder. (Pl.'s SOF ¶ 35). Officer O'Sullivan describes the touch as a "grab"; Antic, however, asserts that he merely "tapped" Officer O'Sullivan "like a normal human being," while saying "excuse me." (O'Sullivan Examination 44; Pl.'s SOF ¶ 35). In any case, Officer O'Sullivan responded by pushing Antic, who — despite being six feet, eleven inches tall and weighing 260 pounds — fell to the ground. (Defs.' SOF ¶ 36; Pl.'s SOF ¶ 36). Antic was then arrested for obstruction of governmental administration ("OGA"), disorderly conduct, and menacing, and spent several hours in jail. (Pl.'s SOF ¶¶ 41-42). In contrast to Sefolosha, Antic suffered no physical injuries as a result of the incident. (Defs.' SOF ¶ 38; Pl.'s SOF ¶ 38).

Later that same day, Antic was charged, in a misdemeanor complaint signed by Officer Giacona, with OGA, disorderly conduct, and harassment. (Brown Decl., Ex. 28). But on September 9, 2015, all of these charges were dismissed on an oral motion by the prosecution. In making the motion, the Assistant District Attorney stated as follows:

> On April 8, 2015, the police responded to 453 West 17th Street in regards to a stabbing outside the 1 Oak nightclub.
> Upon arrival, they were ordered to secure the crime scene and remove over a hundred people off the block. The police ordered the defendant, and separately charged defendant, Thabo Sefolosha, to leave the area. Both defendants refused multiple orders to disperse. The defendant Antic was arrested after he grabbed the shoulder of a police officer, who's attempting to arrest Sefolosha.
> The investigation revealed the police officer had probable cause to arrest defendant Antic because he refused multiple orders to disperse, and because he grabbed the shoulder of a police officer, who's attempting to arrest defendant Sefolosha.
> However, the investigation also revealed that Antic was attempting to calm the escalating situation between Sefolosha and the police officers. Officers reported that while Sefolosha was resisting arrest, Antic was telling Sefolosha to calm down and to do what the officers said.
> Although Antic grabbed the officer's shoulder, he did not cause any injury to the officer. In light of these mitigating circumstances, the People move to dismiss this case against Pero Antic in the interest of justice.

(Docket No. 49 ("Supp. Francolla Decl."), Ex. Q ("Dismissal Tr."), at 2-3). Judge Kenneth McGrath granted the motion, and dismissed all of the charges against Antic. (*Id.* at 3).[1]

On April 1, 2016, Antic filed this suit. His primary claims — brought under federal law, state law, or both, as the case may be — were for false arrest, malicious prosecution, excessive force, and assault and battery. (Docket No. 18 ("Am. Compl.") ¶¶ 32-43, 53-55, 60-67). In addition, he brought a municipal liability claim under federal law and state-law claims for

---

[1] Sefolosha, who was charged with OGA, resisting arrest, and disorderly conduct, among other things, went to trial in October 2015, and was acquitted of all charges. (Sefolosha Compl. ¶¶ 38, 42).

negligent hiring, training, and supervision, and negligence against the City of New York. (*Id.* ¶¶ 44-52, 56-59).

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, however, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some

metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

Defendants moved for summary judgment on all claims. (Docket No. 45).[2] The Court will address each category of Antic's claims in turn.

### A. False Arrest

It is well established that a claim for false arrest, whether brought under federal or state law, is defeated if there was probable cause to arrest the claimant — even if the offense for which there was probable cause was not the offense actually invoked by the arresting officer. *See, e.g.*, *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010) ("[T]he existence of probable cause is an absolute defense to a false arrest claim."); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (Sotomayor, J.) (noting that, for purposes of a false arrest claim, it is irrelevant "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest"). Probable cause to

---

[2] Antic asserts that Defendants failed to move for summary judgment with respect to all of his claims (Docket No. 60 ("Pl.'s Opp'n"), at 5 n.1), but that is not the case. Notably, Antic provides no explanation or support for his assertion; nor does he identify the claims Defendants allegedly left unaddressed.

arrest exists if an arresting officer has actual "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "A court assessing probable cause must examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012) (internal quotation marks omitted). Probable cause must be evaluated "on the totality of the circumstances." *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007); *see also, e.g.*, *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

To prevail on summary judgment, however, Defendants need not prove that there was actually probable cause to arrest Antic. That is because a law enforcement officer is entitled to qualified immunity if "arguable probable cause" existed — that is, if "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law." *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001); *see Kass v. City of New York*, No. 15-CV-2053, 2017 WL 3122289, at \*3-4 (2d Cir. Jul. 24, 2017) (holding that the defendant officers were entitled to qualified immunity because there was arguable probable cause, without reaching the question of whether there was actual probable cause).[3] Specifically, the doctrine of qualified

---

[3] Antic asserts that qualified immunity is available only with respect to his federal false arrest claim (Pl.'s Opp'n 11), but that is wrong. *See, e.g.*, *Kass*, 2017 WL 3122289, at \*9 (dismissing state law false arrest claim because qualified immunity existed for the federal law false arrest claim); *Jenkins*, 478 F.3d at 87 ("If the detective defendants were entitled to quality immunity under federal law, summary judgment would be similarly appropriate on Jenkins' state law false arrest claim."); *Mesa v. City of N.Y.*, No. 09-CV-10464 (JPO), 2013 WL 31002, at \*12 (S.D.N.Y. Jan. 3, 2013) (citing cases).

immunity provides a complete defense where "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *accord Kass*, 2017 WL 3122289, at *3 ("The qualified immunity defense . . . is a broad shield that protects 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013)). "Thus, under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable." *Jenkins*, 478 F.3d at 88. By contrast, if, "on the undisputed facts the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depended on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims." *Id.*

Applying those standards here, the Court concludes that, at a minimum, the Defendant Officers had arguable probable cause to arrest Antic for OGA. Under New York law, a person is guilty of OGA "when he intentionally . . . prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference." N.Y. Penal Law § 195.05. Significantly, district courts in this Circuit have interpreted the statute broadly, holding that "merely approaching the police, or speaking during the course of a police action, or disregarding police instructions, will support a conviction." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 403 (E.D.N.Y. 2011). In *Decker v. Campus*, 981 F. Supp. 851, 858 (S.D.N.Y. 1997), for example, the Court found that officers had probable cause to arrest the plaintiff for OGA when, after the plaintiff and his wife were in a serious car accident, the plaintiff merely "approached a rescue worker, touched his arm, and asked him questions, while

the worker was trying to save [the wife's] life."[4]  Similarly, in *Husbands ex rel. Forde v. City of New York*, No. 05-CV-9252 (NRB), 2007 WL 2454106, at *2, 13 (S.D.N.Y. Aug. 16, 2007), the Court found probable cause because the sister of a suspect (who was struggling with a police officer and believed to have a gun) took "a step toward the officers" as she was urging her brother to stop resisting the officers' attempt to arrest him.  In rejecting plaintiff's false arrest claim, the *Husbands* Court held that the plaintiff's actions constituted "sufficient interference" to justify her arrest under the OGA statute.  *Id.* at 13 (internal quotation marks omitted); *see also Rasmussen*, 766 F. Supp. 2d at 403 (noting that, while the plaintiff "was not acting with an improper motive," her "decision to physically interfere with the conduct of the police falls within the conduct recognized by these authorities as constituting OGA").

Conspicuously, Antic does not discuss, let alone cite, these cases — even though they are the principal bases for Defendants' arguments with respect to probable cause.  (Docket No. 47 ("Defs.' Mem."), at 7-9).  Be that as it may, the decisions require dismissal of Antic's false arrest claim because, whether they were right or wrong in construing the OGA statute so broadly that it would apply to "merely approaching the police, or speaking during the course of a police action," *Rasmussen*, 766 F. Supp. 2d at 403, they compel the conclusion that officers of reasonable competence could disagree on whether the probable cause test was met here.  After all, it is undisputed that Antic established physical contact of some sort with Officer O'Sullivan and attempted to ask him a question while Sefolosha was being arrested.  (*See* Pl.'s SOF ¶ 35,

---

[4]      In *Decker*, the plaintiff also "failed to comply with a deputy sheriff's instructions to 'step back' from the scene of an accident, and physically broke away from the sheriff, who had been called to assist in a rescue attempt."  981 F. Supp. at 858.  The Court's opinion, however, makes clear that it viewed plaintiff's comparatively more innocuous interactions with the rescue worker (approaching him, touching his arm, and asking him questions) as an adequate and independent basis to arrest the plaintiff for OGA.  *See id.* ("In so doing, *plaintiff obstructed the duties of two government officials* and risked delaying the rescue of his wife." (emphasis added)).

36). It is also undisputed that Officer O'Sullivan was only a few feet away from Sefolosha's arrest and that he was, at a minimum, helping to secure and evacuate a crime scene immediately following a stabbing. (*Id.* ¶¶ 12, 31). And finally, it is undisputed that Antic's interference with Officer O'Sullivan caused the Officer to turn, thus diverting his attention from whatever he was doing in connection with his duties at the crime scene. (*Id.* ¶ 36). Given these facts, and the case law discussed above, the Court cannot — and does not — conclude that "no reasonably competent officer" would have acted as the Defendant Officers did in arresting Antic. *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016); *cf. Kass*, 2017 WL 3122289, at *6 (finding arguable probable cause to arrest the plaintiff for OGA because he refused to obey the defendant police officers' repeated orders to move along and, after one officer placed his hand on plaintiff's elbow, the plaintiff told the officer to "get [his] hands off" of him and pulled away).

Antic's principal argument against summary judgment is that there is a factual dispute with respect to whether Officer O'Sullivan was assisting in Sefolosha's arrest when his attention was diverted by Antic's touch. (Docket No. 60 ("Pl.'s Opp'n"), at 9-10). To the extent the record reveals a factual dispute, however, it is not a material one. Notably, Antic cites no authority for the proposition that to be "performing an official function" within the meaning of the OGA statute, an officer must be personally or physically engaged in actually making an arrest. N.Y. Penal Law § 195.05. To the contrary, case law makes plain that an officer need not be directly involved in effectuating an arrest for the statute to be properly invoked. In *Husbands*, for example, the Court found probable cause based on the plaintiff's interference with an officer who was "kneeling alongside" the arrestee, but was "not actively arresting him." 2007 WL 2454106, at *2. And many OGA cases, of course, do not involve arrest situations at all. *See, e.g.*, *Kass*, 2017 WL 3122289, at *4 (finding arguable probable cause where the officers were

"lawfully regulating pedestrian traffic and addressing any congestion or security issues relating to" a protest); *Ali v. City of New York*, No. 11-CV-5469 (LAK), 2012 WL 3958154, at *2 (S.D.N.Y. Sept. 5, 2012) (finding probable cause based on the plaintiff's refusal to disperse from protest grounds); *Richardson v. N.Y.C. Health & Hosp. Corp.*, 05-CV-6278 (RJS), 2009 WL 804096, at *2-3, *9 (S.D.N.Y. Mar. 25, 2009) (finding probable cause where the plaintiff had reached into a police officer's vehicle to remove a clipboard); *Decker*, 981 F. Supp. at 858 (finding probable cause because the plaintiff "approached a rescue worker" trying to save his wife's life after a car accident). Whether or not Officer O'Sullivan was personally or physically engaged in arresting Sefolosha at the time Antic touched him is immaterial; either way, he was "performing an official function" within the meaning of the OGA statute by helping to evacuate and secure a chaotic scene in the immediate aftermath of a violent crime. *See, e.g.*, *Kass*, 2017 WL 3122289, at *4 (holding that officers who were "ensur[ing] crowd control and safety" near a protest were performing an "official function" for the purpose of the OGA statute and noting that the "government certainly has a significant interest in keeping its public spaces safe and free of congestion").

In any event, there is less of a factual dispute than Antic suggests and arguably no factual dispute at all. Officer O'Sullivan testified unambiguously that he and other officers "were trying to put [Sefolosha] in cuffs and the other defendant, Mr. Antic, grabbed me on my right shoulder as we were trying to effect the arrest, diverting my attention from what I was trying to do." (O'Sullivan Examination 44). That account is corroborated by Officer Jordan Rossi (who was named as a defendant by Sefolosha, but is not named as a defendant here), who testified that Antic grabbed an officer's shoulder and that the officer (now known, of course, to be Officer O'Sullivan) was "attempting to effect an arrest on Mr. Sefolosha" at the time. (Rossi Testimony

34). Even more notably, Officer O'Sullivan's account is corroborated by the accounts of Sefolosha; Cherisse Porter, one of the women with Sefolosha and Antic on the night in question; *and* Antic himself. Sefolosha identified Officer O'Sullivan as one of the officers who "attacked" him prior to his arrest. (Francolla Decl., Ex. A ¶ 32). Porter testified that Antic went "over toward Thabo, try[ing] to interfere with the pulling and the tugging." (Brown Decl., Ex. 5, at 34). And Antic himself all but confirmed that Officer O'Sullivan was involved in arresting his teammate when he explained that he touched Officer O'Sullivan's shoulder in order to ask him why the officers were "do[ing] this" to Sefolosha (Antic Examination at 32), and when he noted that another officer held him after he was pushed to the ground because Officer O'Sullivan was "dealing with Thabo [Sefolosha]." (*Id*. at 34).

In the face of this consistent testimony, Antic points to the accounts of Officers Dongvort, Caster, and Giacona as evidence of a factual dispute. (Pl's Opp'n 8-11). But Officer Dongvort's testimony was anything but inconsistent: Before the Civilian Review Control Board, he stated that four to seven officers were engaged in the attempt to apprehend Sefolosha and that Antic put his hand on one of those officers. (Modaferri Decl., Ex. C, at 13, 17). And while he could not remember at his deposition precisely which other officers did what aside from Officers Caster and Giacona, he testified that "a number" of officers were "right in" the area of the arrest, that he "believe[d]" Officer O'Sullivan was one of them, and that "[e]veryone . . . in that area" — including the Officer touched by Antic (whose identity he could not remember) — "was . . . involved" in Sefolosha's arrest. (Dongvort Examination 73, 120). Similarly, while Officer Caster acknowledged that he did not know if Officer O'Sullivan "got physical" with Sefolosha, he testified that Officer O'Sullivan was only one or two feet away from the scuffle and that, at a minimum, the other officer "was assisting by being there as backup." (Caster Examination 105-

06; *see also id.* at 82-83, 141-42). Officer Giacona's testimony is perhaps the most helpful to Antic, as he did state at one point in his deposition that "Officer O'Sullivan was not arresting Mr. Sefolosha." (Giacona Examination at 121). From context, however, it is not clear whether he meant anything more than that Officer O'Sullivan was not physically involved in effectuating Sefolosha's arrest; and he also indicated that he did not know precisely what Officer O'Sullivan was doing immediately before he saw Antic pushed "out the corner of [his] eye." (*Id.* at 118-22). At best, therefore, Antic establishes that some witnesses did not see or do not recall precisely what Officer O'Sullivan's role was in the arrest of Sefolosha. But that does not amount to a factual dispute with respect to the question of whether Officer O'Sullivan was involved in *some* capacity in Sefolosha's arrest. And more broadly, Antic points to nothing in the record contradicting the proposition that Officer O'Sullivan was in the immediate area and performing an "official function" at the time that Antic approached and touched him.

In the alternative, Antic argues that summary judgment is inappropriate because OGA is a specific intent crime and the Defendant Officers lacked proof that he had the necessary intent (because he did not). (Pl.'s Opp'n 6-7). Significantly, however, "because the practical restraints on police in the field are greater with respect to ascertaining intent . . . , the latitude accorded to officers considering the probable cause issue in the context of mens rea crimes must be correspondingly great." *Kass*, 2017 WL 3122289, at *6 (quoting *Zalaski*, 723 F.3d at 393); *see, e.g.*, *McGuire v. City of New York*, 142 F. App'x 1, 3 (2d Cir. 2005) (summary order) ("[W]hen an officer has evidence that a defendant has engaged in conduct proscribed by law . . . he has probable cause to arrest the person even without specific evidence on the elements of knowledge and intent that will have to be proved to secure a conviction at trial." (citing cases)). Thus, it is not surprising that *Husbands*, *Rasmussen*, and the cases upon which they relied "all . . . involved

situations where the plaintiff was not acting with an improper motive . . . , but rather, in each of their views, to assist or alleviate a situation which they believed required their intervention." *Rasmussen*, 766 F. Supp. 2d at 403; *Husbands*, 2007 WL 2454106, at *2 (finding probable cause for a violation of the OGA statute even though the plaintiff was "urg[ing] her brother to comply" with the officers' demands). Put simply, "[a]n action for damages under § 1983 cannot turn on the subjective evaluation of a plaintiff as to whether her intervention is morally or legally justified." *Rasmussen*, 766 F. Supp. 2d at 403.

For these reasons, the Court cannot say that, faced with similar circumstances, "no officer of reasonable competence could have" concluded that Antic had the requisite intent to violate the OGA statute. *Kass*, 2017 WL 3122289, at *3 (internal quotation marks omitted); *see also Decker*, 981 F. Supp. at 860 ("We need not reach whether plaintiff had the requisite intent to have violated the statute . . . because we hold that it was reasonable for [the defendant] to believe that plaintiff had obstructed governmental administration."). To be sure, assuming the truth of Antic's explanation that he was merely trying to defuse the situation — as the Court must — his *motive* was certainly laudable. But that does not mean that he lacked the *intent* to interfere with Officer O'Sullivan — or, more to the point, that Officer O'Sullivan acted in an objectively unreasonable manner in believing that he did. After all, Antic had been with Sefolosha, who was at that very moment engaged in a scuffle with the police. And Antic himself acknowledged that he was seeking to intervene — that he had made contact with Officer O'Sullivan in order to ask him why the officers were "do[ing] this" to Sefolosha. (Antic Examination at 32).[5]

---

[5]     Antic takes issue with Defendants' passing reference to the "collective knowledge" doctrine (*see* Pl.'s Opp'n 10), pursuant to which all information known to one officer can be imputed to all other officers involved in the same investigation. *See United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) (describing the "collective knowledge" doctrine). But there is no

In short, the Court need not determine whether there was probable cause to arrest Antic because, at a minimum, the Defendant Officers had "arguable" probable cause to arrest him for OGA and thus are entitled to qualified immunity with respect to his claims of false arrest. *See, e.g.*, *Benn v. Kissane*, 510 F. App'x 34, 38 (2d Cir. 2013) (summary order) (noting that the Court "need not reach the issue of whether probable cause actually existed . . . because the information known to the officers at the relevant times plainly gave rise to an 'arguable' case that the probable cause standard was satisfied in these circumstances"). It follows that his false arrest claims — under both federal and state law — must be and are dismissed. *See, e.g.*, *Jenkins*, 478 F.3d at 87 ("If the detective defendants were entitled to qualified immunity under federal law, summary judgment would be similarly appropriate on [plaintiff's] state law false arrest claim.").

## B. Malicious Prosecution

The Court turns to Antic's malicious prosecution claims. To prevail on a malicious prosecution claim under federal or state law, a plaintiff must prove, among other things, that the underlying proceedings terminated in his favor. *See, e.g.*, *Manganiello*, 612 F.3d at 161. If the plaintiff was acquitted at trial (as Sefolosha was), that requirement is plainly satisfied. "Where the prosecution did not result in an acquittal," however, "it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused." *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997); *accord Rothstein v. Carriere*, 373 F.3d 275, 285-86 (2d Cir. 2004). Notably, absent evidence that the dismissal was prompted by, for example, proffered evidence of innocence, "dismissals by the prosecution 'in the interests of justice' under N.Y. Crim. Pro. L. § 170.40, are generally considered not to be

---

need to rely on the collective knowledge doctrine here (and it is not clear that Defendants actually do), as Officer O'Sullivan himself arrested Antic. (*See* Francolla Decl., Ex. J, at 15).

dispositions in favor of the accused." *Murphy*, 118 F.3d at 949 (citing state-law cases); *accord Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 674 (2d Cir. 2009) (summary order); *Coleman v. City of New York*, No. 11-CV-2394 (ENV) (RLM), 2016 WL 4184035, at *3 (E.D.N.Y. Feb. 25, 2016); *cf. Hankins v. Great Atl. & Pac. Tea Co.,* 208 A.D. 2d 111, 115-16 (N.Y. App. Div. 1995) (holding that the trial court had erred in dismissing a malicious prosecution claim where the plaintiff alleged that the dismissal "in the interests of justice" was prompted by her uncontroverted alibi). "The prevailing view is that" if a prosecution was abandoned as "the result of a compromise to which the accused agreed, or an act of mercy requested or accepted by the accused, . . . it is not a termination in favor of the accused for purposes of a malicious prosecution claim." *Murphy*, 118 F.3d at 949.

Generally, "the issue of whether a given type of termination was favorable to the accused is a matter of law for the court. If, however, there is a question as to the nature of the circumstances leading to that termination, that question is one for the trier of fact." *Id.* at 950; *see also Russo v. State of N.Y.*, 672 F.2d 1014, 1020 (2d Cir. 1982) (noting that a district court "may decide the issue as a matter of law" where the plaintiff fails to "present evidence of the circumstances under which the criminal proceeding was terminated" or there is no dispute as to the reasons for the termination). In either case, the inquiry is "fact-specific" and turns on "the unique circumstances of the case." *Coleman*, 2016 WL 4184035, at *3; *cf. Cantalino v. Danner*, 96 N.Y.2d 391, 396 (N.Y. 2001) (noting that there is no "per se rule that a dismissal in the interest of justice can never constitute a favorable termination"). "The answer to whether the termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed impl[ies] a lack of

reasonable grounds for the prosecution." *Murphy*, 118 F.3d at 948 (internal quotation marks omitted).

In this case, there is no dispute that the charges against Antic were dismissed in the interests of justice pursuant to Section 170.40 of New York's Criminal Procedure Law. (*See* Pl.'s Opp'n 12). Further, the only evidence in the record of the reasons for that dismissal is the statement of the prosecutor in making the oral motion to dismiss, which makes plain that the dismissal was due to "an act of mercy" and not due to "a lack of reasonable grounds for the prosecution." *Murphy*, 118 F.3d at 948-49 (internal quotation mark omitted). She specifically stated that the investigation had "revealed" that Officer O'Sullivan "had probable cause to arrest defendant Antic because he refused multiple orders to disperse, and because he grabbed the shoulder of a police officer, who [was] attempting to arrest defendant Sefolosha." (Dismissal Tr. 2-3). However, she continued, dismissal was "in the interest of justice" because of "mitigating circumstances" — namely, because the investigation had also revealed that "Antic was attempting to calm the escalating situation between Sefolosha and the police officers" and that Antic "did not cause any injury to the officer." (*Id.*). Antic tries to spin that explanation to be a concession that the prosecution lacked evidence of the "specific intent required to prove the case" (Pl.'s Opp'n 12-13), but that spin is "rooted in the erroneous assumption that good motive for committing a crime is inconsistent with criminal intent." *United States v. Edwards*, 101 F.3d 17, 19 (2d Cir. 1996) (internal quotation marks omitted); *see also, e.g.*, *United States v. Montour*, 944 F.2d 1019, 1028 (2d Cir. 1991) (noting that "good motive" is not necessarily "evidence of lack of specific intent").

Alternatively, Antic downplays the significance of the prosecutor's statement by noting that, "[r]egardless of what position the District Attorney's office takes, it is the Court that makes

the decision on the dismissal of the charges." (Pl.'s Opp'n 13). But that argument presumes that the favorable-termination inquiry turns on what was in the mind of the judge who formally dismissed the charge or charges, and Antic cites no authority suggesting that is the case. To the contrary, the case law makes clear that the focus of the inquiry is on the "cause of the abandonment" by the prosecution. *Murphy*, 118 F.3d at 949; *see also id.* at 948 (noting that "the dispositive inquiry" turns on the reasons for the prosecution's "failure to proceed"). In any event, it is Antic's burden to prove that the proceedings were terminated in his favor and thus, to survive summary judgment, he had to point to evidence in the record suggesting that the charges "were dismissed because evidence existed suggesting [his] innocence." *Coleman*, 2016 WL 4184035, at *4. As he does not do so, his malicious prosecution claims fail as a matter of law. *See id.* (dismissing malicious prosecution claims under nearly identical circumstances).

## C. Excessive Force and Assault and Battery

Antic's final claims against any of the Officer Defendants are for excessive force, under federal law, and assault and battery, under state law. Courts measure such claims against a standard of "objective reasonableness," which calls for "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted); *see also Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (noting that "the essential elements of excessive force and state law assault and battery claims are substantially identical" (internal quotation marks and alterations omitted)). More specifically, a court must consider the totality of the circumstances, "including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight."

*Graham*, 490 U.S. at 396. Significantly, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation marks and citation omitted). Instead, the force used by the law enforcement officer must generally be more than *de minimis* for a claim to be actionable. *See, e.g.*, *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir. 1993) ("[A] de minimis use of force will rarely suffice to state a constitutional claim." (emphasis omitted)). Relatedly, a "[d]e minimis injury can serve as conclusive evidence that de minimis force was used." *Washpon v. Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008); *see also Yang Feng Zhao v. City of N.Y.*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009) (noting that "the extent and nature of the injury, if any, is typically relevant in an arrest context . . . because it is probative of the amount and type of force actually used by the arresting officers, and that in turn is likely to reflect on the reasonableness of that force").

Applying those standards here, Antic's excessive force claim fails as a matter of law. Notably, he alleges only that Officer O'Sullivan, who is smaller than he is, pushed him (and with only "one arm" at that). (Brown Decl., Ex. 1, at 27). Moreover, it is not clear whether the push alone caused him to fall or whether he then "tripped." (*Id.* at 27). And in any event, Antic suffered no injury as a result of the push. (Antic Examination 51). Finally, the incident occurred when Antic came upon Officer O'Sullivan from behind — surprising him during a late-night, tense, and chaotic situation in which the police were attempting to secure the scene of a stabbing and to make an arrest. With 20/20 hindsight — and the knowledge that Antic's motives may well have been pure — Officer O'Sullivan's push could perhaps be viewed as unreasonable. But the Court must "make allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Tracy v. Freshwater*, 623 F.3d

90, 96 (2d Cir. 2010) (quoting *Graham*, 490 U.S. at 397). Making that allowance here, the Court

concludes that no reasonable jury could find that Officer O'Sullivan's force was objectively

unreasonable. Indeed, "to conclude that a 'push' that does not cause the slightest of physical

injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that

any physical contact by an arresting officer with an arrested person is actionable." *Roundtree v.*

*City of New York*, 778 F. Supp. 614, 622 (E.D.N.Y. 1991).

## D. Claims Against the City

That leaves Antic's claims against the City. His federal claim, brought pursuant to

*Monell v. Department of Social Services*, 436 U.S. 658 (1978), falls short, both because he fails

to allege an underlying constitutional violation, *see, e.g., Schultz v. Inc. Vill. of Bellport*, 479 F.

App'x 358, 360 (2d Cir. 2012) (summary order), and because, conclusory allegations aside, he

fails to allege that any violation resulted from a municipal policy, custom, or practice, *see*

*Monell*, 436 U.S. at 690-91; *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985)

(plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to

impose liability under *Monell* . . . ."); *Baines v. City of New York*, No. 10-CV-9545 (JMF), 2014

WL 1087973, at *3 (S.D.N.Y. Mar. 19, 2014) ("[A]bsent extremely severe circumstances, a

plaintiff must allege facts — other than those giving rise to individual liability — supporting an

inference that the municipality has an unconstitutional policy.").[6] And Antic failed to defend his

---

[6]     Antic submits a purportedly expert report authored by Walter Signorelli in support of his
*Monell* claim. (Brown Decl., Ex. 25; Pl.'s Opp'n 17). But the report was apparently not
produced during discovery (Docket No. 64 ("Defs.' Reply"), at 10), so the Court will not rely on
it. *See, e.g.*, *Cranston Print Works Co. v. J. Mason Prods.*, No. 96-CV-9382 (DLC), 1998 WL
993657, at *3 (S.D.N.Y. July 27, 1998) (finding that the defendant could not rely on an affidavit
that was not produced during the period for expert discovery). In any event, as another court has
held with respect to a nearly identical report from the same purported expert, the report provides
no basis for a *Monell* claim. *See De Michele v. City of New York*, No. 09-CV-9334 (PGG), 2012
WL 4354763, at *21 (S.D.N.Y. Sept. 24, 2012) ("Plaintiff cites to a report prepared by his

state-law claims against the City — for negligent hiring, training, and supervision and for negligence (Am. Compl. ¶¶ 48-52, 56-59) — so they are deemed abandoned. *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."). In any event, a negligent hiring, training, and supervising claim requires proof that the alleged wrongful conduct occurred "outside the scope of [] employment," *Velez v. City of New York*, 730 F.3d 128, 137 (2d Cir. 2013), and there is no dispute here that the officers were acting within the scope of their employment. (Am. Compl. ¶ 58 (conceding that the Defendant Officers "were acting within the course and scope of their employment")). And "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment was GRANTED, and all of Antic's claims were dismissed. The Clerk of Court is directed to enter judgment in favor of Defendants and to close the case.

SO ORDERED.

Dated: July 27, 2017
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

expert, Walter Signorelli, asserting that a number of violations of police procedures and practices took place in connection with Plaintiff's arrest. This report does not address the training actually provided to NYPD officers, however, and accordingly does not support Plaintiff's *Monell* claim." (citation omitted)).